IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| CHARLIE GRIGG, and CHARLES WALDSCHMIDT,<br><br>    Plaintiffs,<br><br>  vs.<br><br>UNION PACIFIC RAILROAD CO.,<br><br>    Defendant. | **4:21CV3124**<br>**8:22CV210**<br><br><br>**ORDER** |

   This matter comes before the Court on Plaintiff's motion to compel.  Filing No. 127 in 4:21cv3124; Filing No. 132 in 8:22cv210.[1]  Plaintiff seeks to compel additional discovery relating to potential class members.  For the reasons stated herein, the motion to compel is granted.

   Plaintiff, Charlie Grigg, alleges that Defendant, Union Pacific Railroad Co. ("Union Pacific"), has adopted hearing tests and hearing-protection requirements that discriminate against hearing-impaired employees.  Filing No. 86 at 1.  He files this suit on behalf of a putative class of similarly situated Union Pacific employees.  Id. at 54.  Grigg has not yet moved for class certification, and the parties are in the process of completing discovery regarding potential class members in anticipation of such a motion.

   On July 14, 2022, Grigg served his second set of requests for production of documents seeking various documents relating to potential class members including HR reporting system files, medical comments history, medical records, and data from Union Pacific's "eHealthSafe" database.  Filing No. 129-3 at 2–7.  Union Pacific objected to

---

[1] All remaining citations are to the lead case, 4:21cv3124.  The briefing and evidence with respect to the motion to compel are identical in the lead and member cases aside from their filing numbers.

these requests, arguing it had screened the documents and unilaterally determined some of the information was irrelevant and should be omitted or redacted. Grigg seeks to compel Union Pacific to produce the following:

> 1. For the 378 potential class members who hit on both the parties' agreed search terms and at least one of Union Pacific's five unilaterally imposed search terms, Union Pacific should produce each person's three core documents: the complete HR report, unredacted Medical Comments History, and medical records.
>
> 2. For the 702 potential class members who hit on the parties' agreed search terms, but not one of Union Pacific's five unilaterally imposed search terms, Union Pacific should produce two of the three fundamental documents for each person: their HR report and their unredacted Medical Comments History.
>
> 3. For individuals that Plaintiffs identify as potential class members after reviewing the above documents, Union Pacific should produce, in addition to the documents described in points one and two above, an export of the employee's eHealthSafe file containing exam results, any comments inputted by LHI, the medical conclusions results, the diagnosis description results, and any other fields that describe restrictions, time out of service, and/or time on temporary work assignments.

Filing No. 128 at 17–18.

In response, Union Pacific divides these potential plaintiffs into different categories than does Grigg, arguing it has produced some of the requested information already:

> 1. 43 Individuals whom Union Pacific concedes, based on its manual review of records, are or may be putative class members (hereinafter "Likely Putative Class Members"). For this group, Union Pacific has produced what Plaintiffs call the "three fundamental types of documents" (HR Report, a Medical Comments History, and medical records) completely unredacted.
>
> 2. 135 individuals whom Union Pacific, based on its manual review of records, has determined do not fall within Plaintiffs class definition but whom it recognizes Plaintiffs may need documents in unredacted form to confirm they are not class members (hereinafter "Disputed Putative Class Members"). For those individuals, Union Pacific has

also produced the three fundamental types of documents completely unredacted.

3. 264 individuals whom Union Pacific, based on its manual review of records, has determined are not, and could not under any interpretation of the class definition, putative class members (hereinafter "Non-Putative Class Members"). For this group, Union Pacific has produced the HR Report and the Medical Comments History with redactions of irrelevant information—i.e. information about medical conditions unrelated to hearing and unrelated to adverse actions taken based on hearing acuity tests.

4. 638 individuals for whom Union Pacific asserts no manual review of records is necessary (hereinafter "Unreviewed Individuals"). The basis for Union Pacific's assertion is that the individuals' Activity Comments containing the terms AHPD or "Amplified Hearing," all of which Union Pacific produced to Plaintiffs in what they call an "enormous spreadsheet," demonstrate that they each passed their hearing acuity tests unaided (i.e. without hearing aids) and therefore would have suffered no adverse action because of their hearing acuity exam results.

Filing No. 136 at 2–3.

In reply, Grigg also then re-categorizes the groups of potential plaintiffs, and states, "The present dispute boils down to whether Union Pacific must produce (1) two unredacted documents for each of approximately 800 employees; (2) medical records for 264 of the employees who are more likely to be class members; and (3) certain additional records for perhaps 100 employees deemed likely class members." Filing No. 145 at 1.

The constant re-categorizing of the lists of potential plaintiffs and the information sought/already produced results in a confusing and unclear request at best. However, upon its extensive review, the Court surmises that the dispute is essentially over: 1) whether Union Pacific can redact certain documents because it deems the redacted information irrelevant and 2) whether Union Pacific can withhold certain documents because it deems the information duplicative of other documents already produced and/or

because it believes the employees for whom the information is sought do not qualify as class members.  The answer to both is no.

Rule 26 sets forth the broad scope of discovery:

Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).  "Discovery requests should be considered relevant if there is any possibility the information sought is relevant to any issue in the case and should ordinarily be allowed, unless it is clear the information sought can have no possible bearing on the subject matter of the action."  *Bailey v. City of Bellevue*, No. 4:18CV3132, 2020 WL 5664947, at *3 (D. Neb. Sept. 23, 2020).  Once the requesting party meets the threshold relevance burden, generally "[a]ll discovery requests are a burden on the party who must respond thereto.  Unless the task of producing or answering is unusual, undue or extraordinary, the general rule requires the entity answering or producing the documents to bear that burden."  *Met-Pro Corp. v. Indus. Air Tech., Corp.*, No. 8:07CV262, 2009 WL 553017, at *3 (D. Neb. Mar. 4, 2009) (citing *Continental Ill. Nat'l Bank & Trust Co. of Chicago v. Caton*, 136 F.R.D. 682, 684–85 (D. Kan. 1991)).

Grigg has met his burden of showing the relevance and need for the discovery.  He has demonstrated that Union Pacific's screening methods to attempt to identify potential class members are not perfect, resulting in the information of potential class members being withheld.  While the Court does not infer any ill intent in Union Pacific's methods to parse extensive records in an attempt to identify potential class members, Grigg has

4

shown he should be entitled to review the documents he seeks to "double check" Union Pacific's work in this regard.

Union Pacific has not met its burden to show that producing the requested discovery would be unduly burdensome or that there is any other reason it should not be required to produce it.  Union Pacific makes a cursory argument that it could take 16 hours to export the eHealthSafe data Grigg requests.  Filing No. 136 at 34.  The Court does not find this unduly burdensome given the nature of this case as a putative class action which necessarily involves voluminous information about numerous potential class members. As to the unredacted medical comments history Grigg seeks, it seems Union Pacific has already compiled that information into a spreadsheet, so it would not be unduly burdensome to produce the information in an unredacted and un-compiled format. Furthermore, Union Pacific's argument is not based solely on the amount of work required to extract the data, but also on its claim that the information is duplicative and irrelevant. However, Grigg has shown various examples of data he has not been able to obtain through the documents Union Pacific has already produced.  Accordingly, he is entitled to the eHealthSafe data and unredacted documents he requests.  While not all the employees as to whom Grigg seeks information will ultimately end up as putative class members, that is not the standard set forth in Rule 26; Grigg has shown the information he seeks is necessary and relevant to his class-certification motion.

As to Union Pacific's argument that producing unredacted documents or documents relating to individuals it believes cannot be class members would violate those employees' privacy, the Court finds the protective order (which includes a HIPAA provision) adequately protects against such concerns.  *See* Filing No. 34.

Lastly, Union Pacific's various other arguments are not related to the propriety of the discovery requested but are more properly reserved for opposing Grigg's request for Rule 23 class certification, such as how the Court should interpret the class definition, and whether the timing of certain employees' adverse actions means they cannot be included in the class.  Accordingly,

IT IS ORDERED:

1. Plaintiff's motion to compel, Filing No. 127 in 4:21cv3124; Filing No. 132 in 8:22cv210, is granted.


Dated this 14th day of August, 2024.

BY THE COURT:

s/ Joseph F. Bataillon_____
Senior United States District Judge