IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| CHARLES WALDSCHMIDT, and NANCY POLLARD, as Personal representative of CHARLIE GRIGG; | **4:21CV3124** **8:22CV210** |
| Plaintiffs, | |
| vs. | **AMENDED MEMORANDUM AND ORDER** |
| UNION PACIFIC RAILROAD CO., | |
| Defendant. | |

This case is brought on behalf of a putative class of hearing-impaired employees, former employees, and applicants for employment with Defendant, Union Pacific Railroad Company. Plaintiffs allege Union Pacific violated the Americans with Disabilities Act when it implemented various policies affecting hearing-impaired workers. The case comes before the Court on Plaintiffs' motion to certify class, Filing No. 175, and Defendants' motion to extend progression order deadlines, Filing No. 220.

## I. BACKGROUND

The ADA prohibits covered employers from "discriminat[ing] against a qualified individual on the basis of disability" with respect to the terms and conditions of employment. 42 U.S.C. § 12112(a). The ADA provides a three-pronged definition for determining when an individual is disabled:

The term 'disability' means, with respect to an individual—

(A) a physical or mental impairment that substantially limits one or more major life activities of such individual;

(B) a record of such an impairment; or

(C) being regarded as having such an impairment

1

42 U.S.C. § 12102.  The ADA defines "qualified individual" as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Essential functions are the "fundamental job duties of the employment position." 29 C.F.R. § 1630.2(n)(1).

Discrimination also includes the use of "qualification standards, employment tests, or other selection criteria that screen out or tend to screen out an individual with a disability." 42 U.S.C. § 12112(b)(6).  Qualification standards include "medical, safety and other requirements established by [an employer] as requirements . . . to be eligible for the position held or desired." 29 C.F.R. § 1630.2(q).  An employer has an affirmative defense to a charge of discrimination for qualification standards that deny job benefits to individuals with disabilities if the standards are "shown to be job-related for the position in question and . . . consistent with business necessity." 42 U.S.C. § 12113(a).

Plaintiffs are Train, Engine & Yard (TE&Y) employees, commonly known as train crew or trainmen (or applicants for those positions), with Union Pacific. Filing No. 177-1; Filing No. 177-2.  Union Pacific implemented a set of hearing-protection and hearing-testing policies that applied to all TE&Y employees.  In many cases, these policies exceed the safety procedures implemented by the Federal Railroad Administration's regulations. For example, Union Pacific requires TE&Y employees to wear hearing protection when working within 150 feet of a locomotive or in a locomotive with the windows open. Filing No. 177-3 at 7.  However, the FRA only requires hearing protection when the 8-hour time-

2

weighted average hits of exceeds 90 decibels with a doubling rate of 5 decibels.[1]  49 C.F.R 227.115(d).  Union Pacific's noise-monitoring data shows that of a hundred TE&Y employees, none were exposed to sound at a level that would require hearing protection under the FRA since the year 2001.  Filing No. 178-3.  For example, from 2011 through 2017, TE&Y employees were exposed to an average 8-hour time-weighted average of 79.13 decibels.  Filing No. 178-3.

Union Pacific policy also requires all TE&Y employees to wear hearing protection devices that it approved.  Filing No. 177-3 at 2–3, Filing No. 178-2 at 57–58.  Union Pacific only approves hearing protection that has a manufacturer-issued Noise Reduction Rating (NRR).  Filing No. 178-2 at 58–59.  The company will not modify the policy as an accommodation to disabled workers, including allowing custom-made hearing protection. Filing No. 177-14 at 88–90, Filing No. 177-6 at 2403.  This is in contrast to the FRA which declined to mandate the use of NRR for hearing protection.  See 71 Fed. Reg. at 63,083 ("The [noise exposure] Working Group discussed these comments and expressed concern that replacing that phrase with the NRR (or any other specific indicator) would ultimately be limiting. It would prevent the industry from availing themselves of advances in science and technology. By not listing any particular indicator, FRA leaves it open for the development of new standards.").

Union Pacific also implemented policies specific to hearing-impaired individuals. For example, it requires employees who wear hearing aids to remove their hearing aids

---

[1] Time-weighted average "means the sound level, which, if constant over 8 hours, would result in the same noise dose as is measured."  49 C.F.R. § 227.5.  The doubling rate "means the change in sound level, in decibels, which would require halving or doubling of the allowable exposure time to maintain the same noise dose."  Id.  So, this means that a worker could be exposed to 90 decibels for 8 hours, or 95 decibels for only 4 hours, or 100 decibels for 2 hours.  See 49 C.F.R. Pt. 227, App. A (noise exposure computation chart).

and instead wear amplified hearing protection devices (AHPDs) when hearing protection is required, even if their doctors recommend otherwise. Filing No. 178-2 at 5. Union Pacific approved only certain brands of AHPD. Filing No. 177-4; Filing No. 178-2 at 5. By contrast, the FRA regulations permit employees to wear hearing aids under AHPDs. *See* 49 C.F.R § 227.115(a)(4); Filing No. 177-8 at 2–3.

In conjunction with these hearing policies, Union Pacific also implemented a hearing testing protocol. It required all TE&Y employees to undergo and pass a hearing test at the outset of their employment and every three years. Filing No. 178-2 at 12. The protocol is a two-step process. First, all TE&Y employees are required to take a hearing exam demonstrating they do not have hearing loss in their better ear greater than 40 decibels. Filing No. 177-14 at 144–48, 159–60; Filing No. 178-2 at 12. If an employee wears hearing aids, he or she must remove them for this first-round test. Filing No. 177-14 at 122–28, 138–41. If an employee cannot pass the first round of testing with unaided hearing, Union Pacific defers deciding that employee's fitness for duty pending further testing. Filing No. 177-14 at 159–60; Filing No. 179-3. This often results in the employee being held out of service or forced into temporary roles pending additional testing. Filing No. 177-14 at 141–58.

The second-round test is performed by an audiologist using Union Pacific's standardized instructions and form. Filing No. 177-14 at 159–60; Filing No. 179-3. The audiologist is required to test the employee first with unaided hearing, second while wearing hearing aids, third without wearing hearing aids but while wearing the AHPD Union Pacific has approved with the volume turned off, and fourth without wearing hearing aids but while wearing the AHPD with the volume turned on. Filing No. 179-5; Filing No.

180-1.  To be deemed fit for duty, the employee must be able to pass the second-round test either with unaided hearing or while wearing the AHPD with the volume turned on or off.  Filing No. 177-14 at 157–66.  If the employee can only pass the test with his or her hearing aids on, Union Pacific will not deem them fit for duty.  *Id.*  By contrast, the FRA standard allows employees to pass either with or without hearing aids.  See 49 C.F.R  § 240.121(d); 49 C.F.R. § 242.117(i).

A new medical director rescinded these hearing policies in 2023.  Union Pacific now permits TE&Y workers to wear hearing aids under hearing protection, to use custom hearing-protection devices, and no longer requires employees to use an AHPD while on the job.  Filing No. 177-15 at 74–78.  Additionally, now the second step of the hearing testing protocol allows the employee to pass either with or without hearing aids, in accordance with the FRA standard.  Filing No. 177-15 at 94–97.

Plaintiff Charlie Grigg worked at Union Pacific as a conductor.  He obtained hearing aids in 2018.  Filing No. 183-2 at 49–54; Filing No. 183-1.  Union Pacific then required him to take the step one hearing test without his hearing aids which he failed.  Filing No. 183-2 at 50; Filing No. 181-5 at 135.  Union Pacific suspended Grigg and sent him to perform temporary work for about a month.  Filing No. 181-2 at 649–67.  Grigg was then required to take the second-step AHPD exam.  He passed with his hearing aids on, but did not pass while wearing the AHPD, either while turned off or on.  Filing No. 181-5 at 135.  Union Pacific accordingly would not let Grigg return to work as a conductor and instead placed him on an involuntary medical leave of absence.  Filing No. 181-5 at 133–35.  Although Grigg asked about possible accommodations, Union Pacific instead

suggested he retire early, which he eventually did in August 2018. Filing No. 181-2 at 650.

Plaintiff Charles Waldschmidt began working as a TE&Y employee (brakeman/conductor) at Union Pacific in 2012 and also wears hearing aids. Filing No. 181-2 at 1149–50. From 2015 to 2023, he was repeatedly held out of work after failing Union Pacific's step-one exam and requiring multiple attempts to pass the step-two exam. *See* Filing No. 184-1 at 2, 9, 11; Filing No. 183-3. Since 2019, Waldschmidt has been permitted to take a separate hearing monitoring test with his hearing aids, which has resulted in him being deferred rather than removed from service if he failed the separate step-two exam. Filing No. 183-3 at 2–18. Waldschmidt continues to work for Union Pacific as a TE&Y employee. Filing No. 181-2 at 1149.

## II.   ANALYSIS

Plaintiffs ask the Court to certify two classes under Federal Rule of Civil Procedure 23. First, it asks the Court to certify the following class under Rule 23(b)(3) for the purpose of awarding damages:

> Current and former Union Pacific Train Engine & Yard ("TE&Y") employees or job applicants who had hearing acuity sufficient to pass the FRA's hearing-acuity test—defined as not having an average hearing loss in the better ear greater than 40 decibels at 500 Hz, 1,000 Hz, and 2,000 Hz with or without use of a hearing aid—and who were subjected to one or more adverse actions by Union Pacific because of their hearing-acuity test results between January 1, 2012 and December 31, 2023.

Filing No. 191 at 3.

Second, it asks the Court to certify a class under Rule 23(b)(2) for the purpose of fashioning declaratory and injunctive relief:

> Current Union Pacific Train Engine & Yard ("TE&Y") employees or job applicants who wear at least one hearing aid and who do not have an

average hearing loss in the better ear greater than 40 decibels at 500 Hz, 1,000 Hz, and 2,000 Hz with the use of a hearing aid.

*Id.* at 3–4.

The Court first analyzes the requirements of Rule 23, then turns to the question of the trial plan.

## A. Standard of Review

"To be certified as a class, plaintiffs must meet all of the requirements of Rule 23(a) and must satisfy one of the three subsections of Rule 23(b)." *In re St. Jude Med., Inc.*, 425 F.3d 1116, 1119 (8th Cir. 2005) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997); *Blades v. Monsanto Co.*, 400 F.3d 562, 568-69 (8th Cir. 2005)). "District courts must engage in a 'rigorous analysis' to determine whether the requirements of Rule 23 have been satisfied." *Postawko v. Mo. Dep't of Corr.*, 910 F.3d 1030, 1036 (8th Cir. 2018) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)). "Plaintiffs carry the burden of showing that they have met those requirements." *Id.* (citing *Luiken v. Domino's Pizza*, LLC, 705 F.3d 370, 372 (8th Cir. 2013)). In addressing a motion for class certification, the Court's "primary task is not to determine the final disposition of a plaintiff's claims, but instead to examine whether those claims are appropriate for class resolution." *Id.* (citing *In re Zurn Pex Plumbing Prod. Liab. Litig.*, 644 F.3d at 613).

Federal Rule of Civil Procedure 23(a) "ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011). "Rule 23(a) requires plaintiffs to show that the class satisfies the requirements of 'numerosity, commonality, typicality, and fair and adequate representation.'" *Postawko*, 910 F.3d at 1037 (citing *Luiken*, 705 F.3d at 372); *see also* Fed. R. Civ. P. 23(a).

7

## B. Rule 23(a) Requirements

A case may be litigated as a class-action suit only if:

(1) the class is so numerous that joinder of all members is impracticable;
(2) there are questions of law or fact common to the class;
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  The Court discusses these four elements in turn.

### 1. Numerosity

The numerosity prerequisite requires that "the class [be] so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  "No arbitrary rules regarding the necessary size of classes have been established," and the court may consider the size of the class, "the nature of the action, the size of the individual claims, the inconvenience of trying individual suits, and any other factor relevant to the practicability of joining all the putative class members." *Paxton v. Union Nat. Bank*, 688 F.2d 552, 559-60 (8th Cir. 1982).

The parties agree there are approximately 61 potential class members for the damages class and approximately 100 members for the injunctive class.  This is adequate to demonstrate the individual claims are so numerous as to warrant class treatment. Union Pacific does not contest numerosity, and the Court's finding is in line with classes of similar or smaller sizes.  *See, e.g.*, *Ark. Educ. Ass'n v. Bd. of Educ.*, 446 F.2d 763, 765 (8th Cir. 1971) (finding twenty class members to be sufficiently numerous for purposes of class certification).

### 2. Commonality

To satisfy Rule 23(a)(2) regarding commonality, plaintiffs must show their claims involve a common question or contention "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*, 821 F.3d 992, 998 (8th Cir. 2016).  "[A] proponent of certification must satisfy the commonality requirement by showing that a classwide proceeding will 'generate common answers apt to drive the resolution of the litigation.'" *Bennett v. Nucor Corp.*, 656 F.3d 802, 814 (8th Cir. 2011) (quoting *Dukes*, 564 U.S. at 350).  "Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Dukes*, 564 U.S. at 350 (quoting Richard A. Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L. Rev. 97, 132 (2009)).  However, the rule "does not require that all questions of law or fact raised in the litigation be common . . . [and] indeed, even a single question of law or fact common to the members of the class will satisfy the commonality requirement." *Dukes*, 564 U.S. at 368-69 (internal quotation and citations omitted).

Both proposed classes satisfy commonality, and Union Pacific does not contend otherwise.  As to the damages class, the requirements of the ADA will be applied and questions answered on a common basis.  For example, all class members will prove they were disabled in the same way—by showing they had a "physical impairment" (hearing loss) that "substantially limit[ed] one or more major life activities."  *See* 42 U.S.C. § 12102(1).  They will also demonstrate they had a record of a disability and were perceived as disabled by means of common proof, Union Pacific's own records such as the medical comments history.  *See, e.g.*, Filing No. 216-3.  They will also show they were qualified to

perform their job in the same way. They were all TE&Y employees or applicants with the same essential job functions and were all denied positions or held out of service for the same issue—their hearing.

Lastly, all the class members will assert the same basis for how they were discriminated against—by Union Pacific applying its uniform policies in a manner that unfairly disadvantaged them. Because the plaintiffs allege that Union Pacific's hearing-protection and hearing-testing rules, as applied uniformly to all class members, resulted in discrimination, they present a single factual question capable of common resolution. Similarly, as to their reasonable-accommodation claim, plaintiffs have evidence that Union Pacific uniformly refused to modify its standard policies to accommodate hearing-impaired workers, such as by allowing them to wear their hearing aids under AHPDs, meaning this also presents common legal and factual questions.

The narrower injunctive class also satisfies commonality. Like the damages class, it is concerned with overarching, company-wide policies common to all putative class members. *See, e.g.*, *Bates v. United Parcel Serv.*, 204 F.R.D. 440, 445 (N.D. Cal. 2001) (finding commonality where an ADA case was concerned not with an individualized analysis of each class member's disability or accommodation, but with "the process that [the employer] follows in addressing (and failing to address) communication barriers and determining what jobs deaf workers can hold, not the specific outcomes that a valid process would produce for individual class members").

For these reasons, the Court finds the proposed classes present common questions of fact and law appropriate for class resolution.

### 3. Typicality

A party seeking class certification must also show "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The question is whether "other class members have claims similar to the named plaintiff." DeBoer v. Mellon Mortg. Co., 64 F.3d 1171, 1174 (8th Cir. 1995). "This requirement is generally considered to be satisfied if the claims or defenses of the representatives and the members of the class stem from a single event or are based on the same legal or remedial theory." Paxton, 688 F.2d at 561-62 (quotation marks and citation omitted). "The burden of demonstrating typicality is fairly easily met so long as other class members have claims similar to the named plaintiff." DeBoer, 64 F.3d at 1174. "Determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." Dukes, 564 U.S. at 349, n.5 (quoting Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 157-58, n.13 (1982))

Union Pacific argues the proposed representative's claims do not typify those of the class when it comes to the two-step hearing process. It argues Waldschmidt does not typify the class because he was granted an exemption from the step-two test on one occasion.[2] The Court disagrees this means his claims do not typify the injunctive class. Union Pacific still subjected Waldschmidt to the testing protocol but allowed him to also take a separate test with his hearing aids on. When Waldschmidt failed his unaided FRA hearing exam, Union Pacific decided to defer him rather than remove him from service,

---

[2] Union Pacific also argues Grigg's claims cannot typify the injunctive class because he does not presently work for Union Pacific. Grigg is in fact deceased and his personal representative has been substituted in his stead. Filing No. 174. Plaintiffs concede he is therefore not a member of the injunctive class. See Filing No. 217 at 29 n.49. However, this does not defeat typicality for the other representative, Waldschmidt.

based on him having based his hearing-aid-supported supplemental test six months earlier. Filing No. 183-3; Filing No. 181-1 at 2–11. Thus, he was still subjected to the same two-step testing protocol as all other hearing-impaired TE&Y employees. Furthermore, as Plaintiffs point out, Union Pacific could have easily rescinded its discretionary exemption for him at any time. Therefore, like all members of the injunctive class, he faces a threat of imminent harm of being subjected to the allegedly discriminatory two-step testing process. His claim is therefore typical of the (b)(2) class.

Union Pacific does not dispute that the class representatives' claims typify the damages class, and the Court agrees. Both named plaintiffs were disabled (hearing impaired) TE&Y workers affected by Union Pacific's hearing-related polices. Grigg repeatedly asked supervisors about possible accommodations to allow him to return to work but Union Pacific instead suggested he retire early. Waldschmidt asked Union Pacific to allow him to wear his hearing aids under the AHPD. These claims are typical of all of the damages class members who, like Grigg and Waldschmidt, suffered harm because of Union Pacific's hearing-testing and hearing-protection policies. Rule 23(a)'s requirement for typicality is satisfied.

### 4. Adequacy of Representation

The adequacy requirement of Rule 23(a) requires the class representatives to fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). "Adequacy of representation focuses on two issues: (1) whether the representatives have common interests with class members; and, (2) whether the representatives will vigorously prosecute the interests of the class." *Clayborne v. Omaha Pub. Power Dist.*, 211 F.R.D. 573, 597 (D. Neb. 2002) (citing *Paxton*, 688 F.2d at 562–63). This inquiry "serves to

uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc., v. Windsor*, 521 U.S. 591, 625 (1997).

Union Pacific claims the class representatives will not adequately protect the interests of the class for the same reasons they contest typicality: Grigg no longer works for Union Pacific and Waldschmidt was granted a one-time exception to wear his hearing aids. But this does not render the named plaintiffs inadequate representatives. Grigg, Plaintiffs concede, is not a member of the injunctive class. And Waldschmidt's single exemption does not render him inadequate; he was still required to undergo the two-step testing regimen, still faced the negative consequence of being deferred when he failed, and faces the same ongoing risk of being subjected to the two-step testing protocol in the future. Waldschmidt therefore has both common interests with and a motivation to vigorously pursue the interests of the class. The class representatives meet the adequacy requirement of Rule 23(a).

### C. Rule 23(b) Requirements

In addition to satisfying the four prerequisites of Rule 23(a) as previously discussed, plaintiffs seeking class certification must also establish that their class fits into one of the provisions of Rule 23(b) in order to be certified. *See* Fed. R. Civ. P. 23(b). Plaintiffs here seek a "hybrid" class certification pursuant to both Fed. R. Civ. P. 23(b)(2) and 23(b)(3). The use of this sort of hybrid certification, insulating the (b)(2) class from the money-damage portion of the case, is an available approach that is gaining ground in class action suits." *Ebert v. Gen. Mills, Inc.*, 823 F.3d 472, 480 (8th Cir. 2016).

#### 1. Rule 23(b)(3), the Damages Class

Under Rule 23(b)(3),

A class action may be maintained if Rule 23(a) is satisfied and if
. . .
(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

Union Pacific argues the proposed damages class does not meet the predominance requirement of Rule 23(b)(3) because an individual assessment of each plaintiff will be required to determine if that person was qualified to perform the essential functions of his or her job and suffered an adverse employment action causally linked to his or her disability. Filing No. 208 at 31–32. The Court disagrees.

First, there is little need for separate individualized inquiries into qualifications. By definition, the class members were able to pass the FRA's lesser standards but were affected by Union Pacific's more restrictive policies. Union Pacific does not make a real argument or present any evidence that there are class members who are not qualified for some other reason. Rather, the qualification issue centers around a common question that is already subsumed in the class definition itself: the ability to pass the FRA hearing standard.

14

Second, with respect to whether class members suffered adverse actions, common facts once again predominate. While individual members may have suffered differing degrees of harm (e.g., being held out of service for a short period of time versus being permanently terminated), these are matters that affect the calculation of damages, not issues that preclude predominance. All class members were affected by a uniform policy enforced on a company-wide basis that adversely affected these hearing-impaired workers.

Lastly, a class action is the superior method for litigating the present dispute. As already discussed, the class representatives will adequately pursue the interests of all members. Because there are overarching issues which govern each putative class member's claim, a single, centralized proceeding is vastly superior to sixty-one or more trials with virtually the same facts. Judicial economy and the interests of the putative class members weigh strongly in favor of proceeding as a class action.

This case is a contrast to the (b)(3) class the Eighth Circuit Court of Appeals found lacked predominance in *Harris v. Union Pac. R.R. Co.*, 953 F.3d 1030 (8th Cir. 2020). In that case, the district court had certified a class of disabled employees in a variety of roles who argued Union Pacific's fitness-for-duty policies violated the ADA. The Eighth Circuit reversed the class certification, finding the proposed damages class lacked predominance and the proposed injunctive class lacked cohesiveness because an individualized analysis was required to determine how the fitness-for-duty policy affected each plaintiff. The Court stated, "Because the ADA requires the district court to consider whether Union Pacific's policy is job related and consistent with business necessity as to

15

each of the over 650 jobs at issue to determine whether the policy is unlawfully discriminatory, common questions do not predominate." *Id.* at 1038.

Unlike *Harris*, here the class is more limited such that common facts predominate. For example, while the *Harris* class included hundreds of individuals with numerous job descriptions and disabilities, here the class members are all TE&Y employees and all have the same disability, hearing impairment. The individualized questions that resulted from the broad class definitions in *Harris* do not exist in this case. *See id.* at 1039 ("We also do not reject the possibility that a class bringing an ADA claim through the *Teamsters* framework could be certified under Rule 23. For example, had some number of employees from the same or similar positions with the same or similar disabilities sought to challenge Union Pacific's policy, class certification may have been appropriate.").

For these reasons, the Court concludes the damages class meets the requirements of Rule 23(b)(3). The following class is certified pursuant to Federal Rule of Civil Procedure 23(b)(3):

> Current and former Union Pacific Train Engine & Yard ("TE&Y") employees or job applicants who had hearing acuity sufficient to pass the FRA's hearing-acuity test—defined as not having an average hearing loss in the better ear greater than 40 decibels at 500 Hz, 1,000 Hz, and 2,000 Hz with or without use of a hearing aid—and who were subjected to one or more adverse actions by Union Pacific because of their hearing-acuity test results between January 1, 2012 and December 31, 2023.

### 2. Rule 23(b)(2), the Declaratory/Injunctive Class

A class which meets the prerequisites of Rule 23(a) may also be certified if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "Although Rule 23(b)(2) does

16

not refer to the predominance of common questions, 'class claims thereunder still must be cohesive.'" *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1035 (8th Cir. 2010) (quoting *In re St. Jude Med., Inc.*, 425 F.3d 1116, 1121 (8th Cir. 2005)).  The Eighth Circuit has previously explained "that a class is not suitable for 23(b)(2) certification when the defendant's conduct cannot be evaluated without reference to the individual circumstances of each plaintiff." *Harris*, 953 F.3d at 1038.

Union Pacific agrees that the Court should certify an injunctive class for purposes of challenging its policy requiring employees who normally wear hearing aids to pass its second-step test while wearing an AHPD.  Filing No. 208 at 3 n.1.  However, it disagrees class certification is appropriate for the portion of the injunctive class challenging Union Pacific's practice of requiring hearing-impaired employees to undergo a second examination administered by an audiologist.  It argues assessing the two-step protocol requires an individual analysis for any given hearing-impaired individual which defeats cohesiveness.

The Court disagrees.  Unlike in *Harris* where a variety of jobs and disabilities meant the proposed injunctive class was not cohesive, here each member of the proposed injunctive class faces the same threatened harm from application of the hearing policies. There is no individualized question for either liability or Union Pacific's proposed defenses; rather, for the injunctive class, the focus is on Defendant's policies and relief could be accorded on a uniform basis to the class as a whole.  The proposed injunctive class satisfies Rule 23(b)(2)'s cohesiveness requirement.

Accordingly, the following class is certified pursuant to Federal Rule of Civil Procedure 23(b)(2):

17

> Current Union Pacific Train Engine & Yard ("TE&Y") employees or job applicants who wear at least one hearing aid and who do not have an average hearing loss in the better ear greater than 40 decibels at 500 Hz, 1,000 Hz, and 2,000 Hz with the use of a hearing aid.

### D. Class Claims and Defenses

The class claims and defenses are as follows:  Whether Union Pacific Railroad Co., through the implementation of its hearing-protection and hearing-testing policies, discriminates or discriminated against qualified class members on the basis of their hearing disabilities in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, or other terms, conditions, and privileges of employment, in violation of the Americans with Disabilities Act, 42 U.S.C. § 12112(a), or the Rehabilitation Act of 1973, 29 U.S.C. § 794(d).

These class claims embrace the questions of whether Union Pacific Railroad Co. discriminates or discriminated against class members on the basis of their hearing disabilities by (1) limiting, segregating, or classifying class members in a way that adversely affects or affected the opportunities or status of such class members because of the hearing disabilities of such class members; 42 U.S.C. § 12112(b)(1); 29 U.S.C. § 794(d); (2) utilizing standards, criteria, or methods of administration that have or had the effect of discrimination on the basis of disability; 42 U.S.C. § 12112(b)(3)(A); 29 U.S.C. § 794(d); (3) using qualification standards, employment tests or other selection criteria that screen out or tend to screen out a class of individuals with hearing disabilities; 42 U.S.C. § 12112(b)(6); 29 U.S.C. § 794(d); and (4) not making reasonable accommodations to the known physical limitations of otherwise qualified class members; 42 U.S.C. § 12112(b)(5)(A); 29 U.S.C. § 794(d).

These class claims embrace the question of whether Union Pacific Railroad Co., through the implementation of its hearing-protection and hearing-testing policies, engages or engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of class members. 42 U.S.C. § 1981a(b)(1).  These class claims embrace the following class defenses: (1) whether Union Pacific Railroad Co. can demonstrate that reasonable accommodations would impose an undue hardship on the operation of the business, 42 U.S.C. § 12112(b)(5)(A); 29 U.S.C. § 794(d); (2) whether Union Pacific Railroad Co. can demonstrate that its hearing-protection and hearing-testing standards, tests or other selection criteria are job-related for the TE&Y position and consistent with business necessity, and performance in the TE&Y position cannot be accomplished by reasonable accommodation, 42 U.S.C. §§ 12112(b)(6), 12113(a); 29 U.S.C. § 794(d); and (3) whether Union Pacific Railroad Co. can demonstrate that class members pose or posed a direct threat to the health or safety of themselves or other individuals in the workplace and that such direct threat could not be eliminated by reasonable accommodation, 42 U.S.C. § 12113(b); 29 U.S.C. § 794(d).

### E.  Class Representatives and Class Counsel

The Court appoints Plaintiffs Nancy Pollard and Charles Waldschmidt as class representatives for the Rule 23(b)(3) class.  The Court appoints Plaintiff Waldschmidt as class representative for the Rule 23(b)(2) class. The Court appoints Nicholas Thompson and Mark Thomson of Casey Jones Law, and Adam Hansen, Colin Reeves, and Emma Freeman of Apollo Law, as class counsel. The Court finds that class counsel will fairly and adequately represent the interests of the class. Fed. R. Civ. P. 23(g)(4).  Class counsel have done significant work identifying and investigating the claims in this action.  Fed. R.

19

Civ. P. 23(g)(1)(A)(i).    They have experience handling class actions, other complex litigation, and the types of claims asserted in the action.  Fed. R. Civ. P. 23(g)(1)(A)(ii). Class counsel has demonstrated knowledge of the applicable law.  Fed. R. Civ. P. 23(g)(1)(A)(iii). And they have the necessary resources that counsel will commit to representing the class.  Fed. R. Civ. P. 23(g)(1)(A)(iv).

F.   Class Notice

Rule 23(c)(2)(B) provides "For any class certified under Rule 23(b)(3) . . . the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  The Court orders the parties to confer and present a proposed notice form and notice plan to the Court by October 3, 2025.

**G.   Trial Plan**

The parties agree that, if the Court is inclined to grant class certification, a hybrid class and bifurcated trial plan like that set forth in *International Brotherhood of Teamsters v. United States*, 431 U.S. 324 (1977) is appropriate.  In *Teamsters*, the Supreme Court adopted a two-step framework for analyzing pattern-and-practice claims under Title VII, and courts have since imported that framework when addressing similar claims under the ADA.  *See, e.g.*, *Bates v. United Parcel Serv.*, 204 F.R.D. 440, 449 (N.D. Cal. 2001), *interlocutory appeal denied by* *Bates v. United Parcel Serv.*, No. 01-80253, 2002 WL 32615336, at *1 (9th Cir. Jan. 17, 2002).

Plaintiffs propose that in Phase I, "the jury will determine Union Pacific's liability on Plaintiffs' class ADA and Rehabilitation Act claims and consider Union Pacific's classwide defenses.  The jury will also assess whether to award punitive damages; and, if so, how

much." Filing No. 191 at 65. Then, in Phase II, "the Court will conduct individual hearings to determine individualized economic damages flowing from Union Pacific's unlawful policies. These damages will include wage and benefit loss from missing regular work because of termination, suspensions, or time spent performing temporary work. These monetary damages—which will be relatively modest for employees who were not terminated—are simple to assess and will require only limited evidence for each hearing. The Court will also award compensatory damages at Phase II." Filing No. 191 at 65.

Union Pacific objects to hearing punitive damages at the first phase of the trial. It argues punitive damages must be tried separately to ensure the measure of damages is proportionate and reasonable for each plaintiff. *See* Filing No. 208 at 53. Plaintiffs argue having a separate trial for each of 61 plaintiffs on punitive damages would require repeating the same evidence over and over since punitive damages is concerned primarily with Defendant's actions rather than facts specific to any particular plaintiff. Class members will be entitled to punitive damages if they prove that Union Pacific acted "with malice or with reckless indifference to the[ir] federally protected rights." 42 U.S.C. § 1981a(b)(1).

While the Court agrees with Union Pacific that the jury must be allowed to assess the amount of punitive damages in relation to the severity and extent of harm in the form of compensatory damages each plaintiff suffered, it disagrees this requires hearing punitive damages entirely in Phase II. Rather, at Phase I, the jury will assess liability, classwide defenses, and whether Defendant is liable for punitive damages. Then, at the Phase II trials, the jury will determine the measure of compensatory and punitive damages as to each plaintiff. This approach allows for the presentation of classwide evidence at

Phase I while still preserving the necessity for individualized damages assessment at Phase II.

### H. Motion to extend

Lastly, Union Pacific has moved to extend various deadlines and continue the trial. Filing No. 220.  However, its argument is premised in large part on the necessity of conducting additional discovery should the Court adopt Plaintiffs' trial plan in full.  The Court agrees with Union Pacific that individualized damages matters are appropriate for Phase II of the bifurcated trial and has divided the trial accordingly as set forth above. Accordingly, Union Pacific's motion to extend is denied.

### III.    CONCLUSION

For the foregoing reasons, the Court concludes the proposed classes should be certified and the bifurcated trial plan adopted in part.

IT IS ORDERED:

1. Plaintiffs' Motion to Amend, Filing No. 230 in Case 4:21cv3124 and Filing No. 236 in Case 8:22cv210, is granted.

2. Plaintiffs' Motion to Certify Class, Filing No. 175 in Case 4:21cv3124 and Filing No. 182 in Case 8:22cv210, is granted as set forth herein.

3. The Court orders the parties to confer and present a proposed notice form and notice plan to the Court by October 3, 2025

4. Defendants' Motion to Extend Progression Order Deadlines, Filing No. 220 in 4:21cv3124 and Filing No. 227 in 8:22cv210, is denied.

Dated this 24th day of September, 2025.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge